UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
THOMAS PASSERO, et al.,

                        Plaintiffs,

v.

MARK FORD, et al.,

                        Defendants.
-------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

20-CV-05631 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiffs Thomas Passero ("Passero"), Laura Katzenberger ("Katzenberger"), Prosthetic and Orthotic Associates, Inc. ("POA"), Handspring Rehabilitation, LLC ("Handspring") and Handspring Management Company, Inc. ("Handspring Mgmt." and, together with POA and Handspring, the "Companies" and, collectively, "Plaintiffs") commenced this action against defendants Mark Ford ("Ford")[1] and Randolph Schmitke ("Defendant") on July 23, 2020. (Doc. 4, "Compl."). Plaintiffs allege that the parties entered into a Stock Purchase and Redemption Agreement dated as of January 1, 2017 (the "SPRA"), structured as a management buy-out of a portion of Passero's majority ownership interests in the Companies. (*Id.* ¶ 6). Plaintiffs seek a declaration that the SPRA is unenforceable, has been terminated, and is of no further force or effect; or alternatively, that Defendant is estopped from purchasing Passero's equity interests pursuant to the SPRA. (*Id.* at 6).

      Before the Court is Defendant's motion to compel Plaintiffs to arbitrate their claims pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Defendant filed his motion on October 15, 2020 (Doc. 11; Doc. 14, "Def. Br."), Plaintiffs filed their opposition on

---

[1] Plaintiffs voluntarily dismissed Ford from this action with prejudice on September 23, 2020. (*See* Doc. 9).

1

November 6, 2020 (Doc. 17, "Opp'n. Br."), and the motion was fully briefed with Defendant's submission of a reply memorandum of law on November 13, 2020 (Doc. 18, "Reply Br.").[2]

For the reasons set forth below, Defendant's motion to compel arbitration is GRANTED.

## BACKGROUND

On January 1, 2017, Passero, as seller, Schmitke, Katzenberger, and Ford, as purchasers, and the Companies entered into the SPRA together with a Shareholders' Agreement for POA, a Shareholders' Agreement for Handspring Mgmt. (together, the "Shareholders' Agreements"), an Operating Agreement for Handspring, and a number of additional documents, all contained in the Closing Binder (collectively, the "MBO"). (Loomba Decl. Ex. A). The purpose of the MBO was to effectuate the sale, purchase, and redemption of shares and membership units owned by Passero. (*Id*. Ex. A-1 at 6, 55; *id*. Ex. A-2 at 19-20, 51). The Shareholders' Agreements give the corporations and shareholders the option to purchase the shares owned by the selling shareholders; and also recognize that the parties had entered into the SPRA, requiring a mandatory buyout of the selling shareholder, effective on the same date as the Shareholders' Agreements. (*Id*. Ex. A-1 at 55; *id*. Ex. A-2 at 51).

As relevant to the instant motion, the SPRA does not contain any dispute resolution clause, but the Shareholders' Agreements do contain arbitration clauses, whichprovide, in pertinent part, as follows:

> In the event that any controversy or claim arising out of this Agreement cannot be resolved by the parties, the parties agree to participate in mediation in Orange County, New York, facilitated by

---

[2] Along with the memorandum of law in support its motion, Defendant filed the Declaration of Randolph W. Schmitke (Doc. 12, "Schmitke Decl.") and the Declaration of Lalit K. Loomba (Doc. 13, "Loomba Decl."). Annexed to the Loomba Declaration were seven Exhibits. Of particular relevance to this motion is a closing binder containing the SPRA and each of the other corporate agreements and related documentation at issue (the "Closing Binder"), filed over two separate docket entries (Doc. 13-1, "Loomba Decl, Ex. A-1"; Doc. 13-2, "Loomba Decl. Ex. A-2" (together, "Loomba Decl. Ex. A")). References to Exhibits correspond to the pagination assigned by ECF.

> a mutually agreed mediator and process of mediation. . . . If the controversy or claim is not resolved during such mediation, such controversy or claim shall be determined by arbitration in Orange County, New York, in accordance with the then-current rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof. . . . However, it is understood and agreed by and between the parties that disputes concerning the determination of issues which require the unanimous consent of the Shareholders shall be non-arbitrable.

(*Id*. Ex. A-1 at 61; *id*. Ex. A-2 at 57).

Plaintiffs allege in this action that only the enforceability of the SPRA is in dispute and seek a declaration that the SPRA is unenforceable, has been terminated, and is of no further force or effect; or alternatively that Defendant is estopped from purchasing Passero's equity interests pursuant to the SPRA. (Compl. at 6). In addition to submitting certain of their disputes to mediation (*see* Loomba Decl. Ex. B; Doc. 15-5), Plaintiffs commenced the instant action. Defendant now moves to compel arbitration and dismiss this action.

## STANDARD OF REVIEW

"In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable to a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "As on a motion for summary judgment, the parties may submit documents in support or opposition of their motion, and the court 'consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party.'" *Cornelius v. Wells Fargo Bank, N.A.*, No. 19-CV-11043, 2020 WL 1809324, at *4 (S.D.N.Y. Apr. 8, 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (alteration in original)).

"If the party seeking arbitration demonstrates its entitlement to arbitration by a showing of evidentiary facts, the burden then shifts to the opposing party to submit evidentiary facts demonstrating there is a dispute of fact showing that the agreement is inapplicable or invalid." *Id.*; *see also Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 284 (S.D.N.Y. 2019) ("[T]he 'party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010))). Opposition "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Citadel Servicing Corp.*, 431 F. Supp. 3d at 284 (quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). "'If undisputed facts in the record require[] the issue of arbitrability to be resolved against the [p]laintiff as a matter of law,' then a district court must compel arbitration." *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) (quoting *Bensadoun*, 316 F.3d at 175 (alterations in original)); *see also Klein v. Experian Info. Sols., Inc.*, No. 19-CV-11156, 2020 WL 6365766, at *3 (S.D.N.Y. Oct. 29, 2020).

The FAA provides in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "This provision establishes 'a liberal federal policy favoring arbitration agreements,'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and "reflects the overarching principle that arbitration is a matter of contract," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 223 (2013). *See also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2013) (explaining that

the FAA "requires courts to enforce the bargain of the parties to arbitrate" (internal quotation marks omitted)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (noting that "courts must place arbitration agreements on an equal footing with other contracts"); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (observing that the FAA "places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms" (internal citations omitted)); *Safra Secs., LLC v. Gonzalez*, 764 F. App'x 125, 125 (2d Cir. 2019) ("Whether parties have agreed to arbitrate a matter is fundamentally a question of contractual interpretation.").

Where, as here, the "dispute essentially concerns a [q]uestion[] of arbitrability, which is a term of art covering disputes about whether the parties are bound by a given arbitration clause, as well as disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," courts in the Second Circuit apply a "two-part test." *Ostreicher v. TransUnion, LLC*, No. 19-CV-8174, 2020 WL 3414633, at *5 (S.D.N.Y. June 22, 2020) (alterations in original, internal quotation marks omitted). Under this test, the Court "must consider (1) whether [the parties] 'have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement.'" *Scott v. JPMorgan Chase & Co.*, 603 F. App'x 33, 35 (2d Cir. 2015) (quoting *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)). However, before reaching the second element, courts must "determine who—the court or the arbitrator—properly decides the issue." *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d at 128 (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011)). "[T]he question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Alcoa Corp. v. Anheuser-Busch InBev*

*SA/NV*, No. 20-CV-3834, 2020 WL 5229706, at *2 (S.D.N.Y. Sept. 2, 2020) (internal citations and quotation marks omitted).

When a court concludes that the parties entered into an integrated contract which included an arbitration clause, it is proper to compel arbitration of the issues framed in the complaint. *CNA Reinsurance of London, Ltd. v. Home Ins. Co.*, No. 85-CV-5681, 1985 WL 4267, at *2, n.1 (S.D.N.Y. Dec. 2, 1985). Indeed, where multiple agreements are concerned, and not all of them contain arbitration clauses, the Court should consider whether the agreements "are related, integrated contracts" and look to the "purpose of the entire transaction" in determining a motion to compel arbitration. *Great Lengths Universal Hair Extensions S.r.L. v. Gold*, No. 16-CV-193, 2017 WL 1731184, at *4 (S.D.N.Y. Mar. 29, 2017).

## ANALYSIS

The MBO is comprised of related, integrated agreements among the parties and as such, is subject to the dispute resolution clause set forth in the Shareholders' Agreements. The Shareholders' Agreements provide an *option* to purchase that which the SPRA made mandatory. The agreements were contemporaneously made and contemplated each other's existence and execution: The Shareholders' Agreements acknowledge that the SPRA makes mandatory that which the Shareholders' Agreements provided as optional, namely, the terms of Passero's withdrawal as shareholder and payment for a portion of his shares by the remaining shareholders and the Companies. (*Id*. Ex. A-1 at 55; *id*. Ex. A-2 at 51). The SPRA incorporates the Shareholders' Agreements and Operating Agreement both by implicit reference, as the shares and membership units that are the subject of the SPRA are governed by the Shareholders' Agreements and Operating Agreement, and by explicit reference to their existence (*see, e.g., id*. Ex. A-1 at 2). Although Plaintiffs contend that because they seek declaratory relief concerning the parties' rights

and obligations with respect to the SPRA only the arbitration clause does not control, the Court finds that the SPRA cannot and should not be read in a vacuum without reference to the Shareholders' Agreements and other agreements and documents contained in the Closing Binder. The documents reveal that the parties are sophisticated and represented by counsel. The situation they created is that two of these integrated agreements contain arbitration clauses and two do not. There is more than enough overlap that the agreements must be read and construed together, Plaintiff's suggestion to the contrary notwithstanding. Had the parties (or their counsel) intended otherwise, surely the SPRA could have been written to include such eventuality. Accordingly, as related, integrated agreements, and in light of the overall purpose of the entire transaction, the arbitration clauses set forth in the Shareholders' Agreements apply to the SPRA as well.

The Court finds further that the parties clearly and unmistakably agreed that the question of arbitrability is for the arbitrator to decide. The parties' arbitration clause explicitly refers to the rules of the American Arbitration Association ("AAA"), which in turn gives the arbitrator the power to rule on any objections with respect to the arbitrability of any claim or counterclaim. AAA Rule R-7(a); *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 WL 3013294, at *10 (E.D.N.Y. July 3, 2014) (the Court may take judicial notice of the AAA Rules). "The Second Circuit has 'held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Klein*, 2014 WL 3013294, at *10 (quoting *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)). Plaintiffs' argument that because certain disputes are carved out of the requirement to arbitrate the parties did not intend to submit the question of arbitrability to the arbitrator is belied by the language of the clause itself. *Cf. Alcoa Corp.*, 2020 WL 5229706, at *1 ("(i) *The arbitrator shall only be*

*empowered to determine* . . . (b) whether any breach of this Agreement, including but not limited to any breach of confidentiality, has occurred; and (c) any other dispute arising out of this Agreement, except for disputes relating to infringement, validity or enforceability of the Alcoa Patent Rights or the Alcoa Bottle Patent Rights" (emphasis added)). Rather, here the parties' incorporation of the AAA Rules into the arbitration clause is evidence of their clear and unmistakable intent to delegate questions of arbitrability to arbitration. Accordingly, the Court enforces the parties' clear and unmistakable intent to have the question of arbitrability decided by the arbitrator. The arbitrator will determine what of Plaintiff's claims are arbitrable and this Court will abide that event.

## CONCLUSION

Based upon the foregoing, Defendant's motion to compel arbitration is GRANTED. The action is stayed pending arbitration.

The Clerk of Court is respectfully directed to: (i) terminate the motion (Doc. 11); and (ii) administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[3]

Dated:  White Plains, New York
        April 7, 2021

SO ORDERED:

_____
Philip M. Halpern
United States District Judge

---

[3] *See Zimmerman v. UBS AG*, No. 17-CV-4503, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), *appeal dismissed*, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").